**Rita M. PERKINS**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al.**

**Civ. A. No. 74–2320.**

United States District Court,

E. D. Louisiana.

Aug. 5, 1975.

---

**1372**

Sue Spilsbury, New Orleans, La., for plaintiff.

Leonard P. Avery, New Orleans, La., for defendants.

JACK M. GORDON, District Judge.

This case initially came before the Court on May 14, 1975, pursuant to a motion made on behalf of the United States Department of Agriculture (the Department). In its Motion for Summary Judgment, the Department argued that since the parties were previously afforded the opportunity to create a reviewable record in the agency hearings and the Board of Appellate Review proceedings, the District Court's function was limited to a review of the agency record. The plaintiff, Mrs. Rita M. Perkins, who argued that she was refused promotion to the level of G.S. 13 because of sex discrimination, contended that the District Court should have granted her a trial de novo.

This Court, after considering the case of *Hackley v. Johnson,* 360 F.Supp. 1247 (D.D.C.1973), and *Tomlin v. United States Air Force,* 369 F.Supp. 353 (S.D. Ohio W.D.1974), concluded that the District Court's function was only to evaluate the administrative record for substantial evidence tending to support the agency's findings. In evaluating the record in the instant case, the Court found that the agency's conclusion that Mrs. Perkins was not denied a promotion because of sex discrimination was supported by substantial evidence and was in fact supported by a preponderance of the evidence. Mrs. Perkins now moves the Court to reconsider its prior decision granting the Department's Motion for Summary Judgment in light of a recent Third Circuit case captioned *Sperling v. United States of America,* 515 F.2d 465 (3rd Cir. 1975).

Since the plaintiff here is a government employee, § 717 of the Equal Employment Opportunity Act of 1972, Pub. L. No. 92–261 (42 U.S.C. § 2000e–16) would apply. The issue, however, is whether a federal employee has the same right to a trial de novo in the United States District Courts, just as the private employee has under § 706 of the Equal Employment Opportunity Act (42 U.S.C. § 2000e–5). To answer such a question, the entire scheme with special emphasis upon the procedural avenues available to complainants must be examined for both governmental and private employees.

Under § 706 (42 U.S.C. § 2000e–5), an employee may make a charge against an employer alleging that such employer has engaged in an unlawful employment practice. After such charge is made, and within ten days, the Equal Employment Opportunity Commission shall make an investigation thereof. If within thirty days after a charge is filed with the Commission, the Commission has been unable to secure from the respondent a conciliation, the Commission may bring a civil action. If a charge filed with the Commission is dismissed, or if within 180 days from filing of such a charge the Commission has not filed a civil action, the Commission should so notify the person aggrieved who then has 90 days from such notice to bring a civil action.

Two facets of the EEOC procedure are especially significant vis-a-vis the procedure applicable to government employees. First, the EEOC, if it believes after investigation that the charge is true, "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion." [42 U.S.C. § 2000e–5(b)]. Second, the individual claimant may bring a civil suit after the EEOC so notifies the aggrieved party. It is interesting to note the statutory scheme governing EEOC proceedings

contains no provision for a hearing or other proceeding which would allow the parties to build a record by examining witnesses under oath.

The procedural format available to federal employees who bring identical claims is completely different from that applicable to employees in the private sector. First, pursuant to 42 U.S.C. § 2000e–16(b), each agency is required to establish a procedure for the processing of discrimination complaints in conformity with the rules of the Civil Service Commission. 5 CFR 713.203–211. The regulations further provide for consultation with an Equal Employment Opportunity Counselor to secure an informal resolution. But, if such an attempt at informal resolution is unsuccessful, a prompt investigation follows. 5 CFR 713.213–216. After the complainant has reviewed the completed investigatory file, the agency must again provide an opportunity for informal adjustment of the complaint, and if this is not successful, the complainant has a right to a hearing. 5 CFR 713.217. At this point, the EEOC proceeding and the federal employee proceeding begin to materially differ, because at this point, the latter provides for a hearing while the former does not. The hearing is a formal procedure which provides the complainant essentially the same due process protection as any other judicial proceeding, including the opportunity to develop a record by examining and cross-examining witnesses under an oath or affirmation, with the right of compulsory process. At the conclusion of such hearing, the hearing examiner prepares written conclusions based upon his findings of fact, and such written findings are then subject to approval by the head of the agency. After final approval of the examiner's report, this written statement becomes the final action of the agency which is then appealable *either* to the Board of Appellate Review within the Civil Service Commission or the United States District Court. If a complainant elects to seek review via the Board of Appellate Review, a decision by the Board is further reviewable by the United States District Court.

Even in light of the vastly different statutory schemes involved, the plaintiff, as did the Third Circuit Court of Appeals, attaches great significance to 42 U.S.C. 2000e–16(d) which reads:

> (d) The provisions of section 2000e–5(f) through (k) of this title, *as applicable,* shall govern civil actions brought hereunder. (Emphasis added).

The plaintiff, using this provision as the bulwark of her argument, contends that Sections 2000e–5(f) through (k) indicate that claims brought before a United States District Court should proceed as de novo trials. Furthermore, the complainant alleges that since such sections were made applicable to actions brought by Federal employees, such federal actions must also proceed in a de novo fashion.

Opposing this logic, Judge Gesell explained in *Hackley v. Johnson, supra,* that the language "as applicable" in Section 2000e–16(d) above would make that section inapplicable in cases involving federal employees.

Further distinguishing government employee cases from those involving private sector employees, the Court in *Hackley* said:

> "Moreover, it is difficult, as the present cases illustrate, to differentiate between pure discrimination claims and the underlying intricacies of civil service regulations governing job qualification selection for promotion, training and the like. The Commission's growing expertise in civil rights matters, complete with its preeminent expertise in these latter areas, emphasizes that an automatic trial de novo will not serve the laudable purpose of the Act."

*Hackley v. Johnson, supra,* at 1252.

There are many practical reasons for the Courts to restrict their review of administrative proceedings to the record

already made, but the Third Circuit Court of Appeals in *Sperling v. United States, supra,* chose instead to rely upon a thorough examination of the legislative history accompanying the Equal Employment Opportunity Act of 1972.

The Third Circuit has not been the first court to indulge in the exercise of trying to reach a definitive conclusion on the de novo trial issue by resorting to the legislative history of the 1972 amendments. *Hackley v. Johnson, supra,* was probably the first such attempt followed by *Pointer v. Sampson,* 62 F.R. D. 689 (District of Columbia, 1974).

In *Pointer,* the Court explains away what seems to be irreconcilable conflict between Senator Williams' comments concerning the amendment and the Senate Report No. 92–415, 92nd Cong., 1st Sess. (1971).

Senator Williams, Chairman of the Senate Committee on Labor and Public Welfare, and floor manager of the Committee Bill stated:

"Finally, written expressly into the law is a provision enabling an aggrieved Federal employee *to file an action in U.S. District Court for a review of the administrative proceeding record after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with that decision.* Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector, and I believe that the committee has acted wisely in this regard." (Emphasis added)

Bound Vol. No. 118 Cong.Rec. 4922 (1972).

Although it appears that Senator Williams anticipated only a review of the administrative record, the Senate Report seems to suggest a de novo review of either the agency or Civil Service Commission findings.[1] The pertinent portion of the report reads:

### PRIVATE RIGHT OF ACTION

An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action of review of the agency proceedings in the courts by Federal employees who are not satisfied with the Agency or Commission decision.

The testimony of the Civil Service Commission notwithstanding, the Committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U.S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. *The provisions adopted by the Committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the full rights of review available in the courts, as are granted to individuals in the private sector under Title VII. (Emphasis added).*

The bill section 717(c) enables the aggrieved Federal employee (or applicant for employment) to file an action in the appropriate U.S. District Court after either a final order by his agency or a final order of the Civil Service Commission or an appeal from an agency decision or order in any personnel action in which the issue of discrimination on the basis of race, color, religion, sex or national origin has been raised by the aggrieved person. It is intended that the employee

---

1. Senate Report No. 92–415, 92nd Congress, 1st Sess. 16–17 (1971); *See also,* Bound Vol. 118 Cong.Rec. 4923 (1972).

have the option to go to the appropriate district court or the District Court for the District of Columbia after either the final decision within his agency on his appeal from the personnel action complained of or after an appropriate appeal to the Civil Service Commission or after the lapse of 180 days from the filing of the initial complaint or appeal with the Civil Service Commission.

The apparent inconsistencies between Senator Williams' remarks and the Senate Report were considered in the *Pointer* case, wherein the Court explained:

"If one did not look further into the context of Senator Williams' remarks and the statements in the Senate Report, one might think there was an irreconcilable inconsistency between the statement that federal employees should have the same rights as private employees but still must be limited to review of the administrative record. Clearly, private employees had more than the mere right to have their EEOC record reviewed by courts. This apparent inconsistency is explained by the fact these remarks were addressed to the rights of private employees as proposed *in the parallel reformation* of EEOC procedures in the 1972 Act.

As originally contemplated in the Williams and Committee bills, Title VII enforcement responsibilities for private employees were lodged with the EEOC which was to issue cease and desist orders and direct reinstatement or hiring. Review of EEOC final determination was subject to review by the United States Courts of Appeals under the substantial evidence test, i. e., limited review. Thus, when statements were made concerning the giving to federal employees the same rights as private employees, it is evident that what was meant was a court review of the record whether it be by the Courts of Appeals as to private employees or by the District Courts vis-a-vis federal employees.

If the statements of Senator Williams are taken in this context, any apparent inconsistency between review of the record and equality of rights disappears." 62 F.R.D. 689 (1974). *Pointer v. Sampson, supra,* 62 F.R.D. at 693.

The significance of the above discussion in *Pointer* is that Congress recognized that the more quasi judicial authority an agency or Commission has, the more duplicative a subsequent District Court proceeding becomes. Obviously in an attempt to obviate this duplicity, Congress proposed review in the appropriate Court of Appeals.

In the instant case, Congress has provided for a hearing on the agency level which must allow the complainant not only the right to be represented by counsel, but also the right to examine and cross-examine witnesses under oath. Moreover, all testimony must be recorded and transcribed and findings of fact must be prepared. In short, this authority is of the same genealogy as that contemplated by the Senate in Senate Report No. 92.–415, and as such was never intended to be undercut by further district court de novo proceedings.

Electing to waive the above described agency hearing, the plaintiff in the case *sub judice* chose to accept the proposed agency decision as final. This decision to waive the hearing was totally voluntary and admittedly a strategic maneuver,[2] inasmuch as the various witnesses the complainant now desires to call during a de novo hearing before this Court had previously indicated their willingness to testify before the agency hearing examiner. In fact, each of these witnesses had provided the Office of Investigation (OOI) with affidavits of their proposed testimony and it was upon these sworn statements that the agency relied to reach a decision denying the claim of discrimination.

---

2. According to the representation of plaintiff's counsel to the Court during original oral argument on May 14, 1975.

At this point, the plaintiff, having the opportunity to appeal the final agency decision to either the U.S. District Court or to the Board of Appeals & Review within the Civil Service Commission, preferred to have her case reviewed by the Civil Service Commission.

As has been explained, Congress purposefully vested in the Civil Service Commission certain remedial powers similar to the inherent authority of the United States Courts. As provided for in Title 42 United States Code, Section 2000e–16(b),[3] the Commission shall have authority to enforce the provisions of subsection (a)[4] including the authority to reinstate or hire employees and to award back pay when necessary to carry out the mandate of the Act. Furthermore, after reviewing the evidence before it, the Board of Appeals & Review may remand a complaint to the agency for further investigation or have an additional investigation conducted by the Commission personnel. See, 5 CFR 713. 234.

In appealing to the Civil Service Commission, the complainant relied upon the same affidavits that were submitted to the agency. After a thorough review of the investigative file, the Commission, through written reasons, affirmed the agency decision. Since the evidence contained in the affidavits of these witnesses is the same evidence as that contained in additional affidavits submitted in opposition to the Motion for Summary Judgment filed by the United States before this Court, it is reasonable to assume that the Board of Appeals & Review considered all available evidence in reaching its conclusion. Put another way, there has been no new evidence which would suggest that this Court should either conduct a de novo trial or supplement the investigative report in accordance with the procedure suggested in *Johnson v. United States Postal Service*, 364 F.Supp. 37 (N.D.Fla.1973), *aff'd.* 497 F.2d 128 (5th Cir. 1974).

Apart from the evidentiary standpoint, it is this Court's opinion that to allow a government employee the opportunity to circumvent the agency hearing and still be able to appeal to the Civil Service Commission, knowing that such procedure would not prejudice his rights to a de novo trial in District Court, would effectively abrogate the intention of Congress to provide an effective agency safeguard against discrimination, and meaningful Civil Service Commission review thereof.

As the Court in *Thompson v. United States Department of Justice*, 372 F. Supp. 762 (N.D.Cal.1974) said:

This Court would be improperly tampering with the administrative process if it were to fashion a rule entitling an aggrieved person to a hearing de novo in district court whenever he knowingly and voluntarily waived an administrative hearing. Id. at 764.

---

3. 2000e–16(b) reads:

"Except as otherwise provided in this subsection, the Civil Service Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section . . . ."

4. 2000e–16(a) reads:

"All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

*See also, Smith v. Snyder,* 381 F.Supp. 1083 (E.D.Pa.1974).

Because the plaintiff appealed to the Civil Service Commission upon the investigative file, this Court is convinced that to conduct a de novo trial would be to destroy the utility of the Civil Service Commission.

Apart from the legislative history, this Court finds further authority for limiting such a review to only an evaluation of the agency's record. In *Johnson v. United States Postal Service,* 364 F. Supp. 37 (N.D.Fla.1973), *aff'd.* 497 F.2d 128 (5th Cir. 1974), the Court said:

"But since the court is of the view that the record does not support a finding of discrimination a de novo review is not necessitated. The Court will, however, view the record as supplemented by the parties to determine whether plaintiff has any basis for relief; such a viewing shall not be restricted in any manner to the earlier administrative rulings." Id. at p. 41.

Although the trial de novo issue was not mentioned in the Fifth Circuit's per curiam opinion, the affirmance of the lower Court's decision is viewed by this court as a tacit approval of the de novo issue. Because of this decision by the Fifth Circuit, this Court is of the opinion that the Third Circuit in *Sperling* might have overlooked this fact when it said that the only circuit decision to have reached the issue was the Tenth Circuit in *Salone v. Limited States,* 511 F.2d 902 (10th Cir. 1975).[5]

■ Therefore, this Court elects to follow the procedure which was explicitly approved by the Ninth and Tenth Circuit Courts of Appeal and tacitly approved by the Fifth Circuit, and for this reason will grant the motion of the United States Department of Agricul-

ture without a trial de novo inasmuch as it is convinced that the findings of the Civil Service Commission are supported by a preponderance of the evidence, as is required in the recent case of *Guilday v. United States Department of Justice,* 385 F.Supp. 1096 (D.Del.1974).

Accordingly,

It is ordered that these written reasons for judgment be filed in the record of this proceeding in support of the Court's previous oral reasons granting the motion for summary judgment made on behalf of the United States Department of Agriculture and against Mrs. Rita M. Perkins, and in further support of the Court's oral order denying Mrs. Perkins' motion for reconsideration.

5. *Sperling v. United States,* 515 F.2d 465 (3rd Cir. 1975) n. 39. Seven days after the *Sperling* decision, the 9th Circuit Court of Appeals in *Chandler v. Johnson,* 515 F.2d 251 (9th Cir. 1975), held that in cases filed by Federal Employees alleging violations of 42 U.S.C. § 2000e–16, de novo proceedings were not required in the United States District Courts. Accordingly, two circuits (the Ninth and Tenth) have expressly considered the issue and have decided that de novo trials on the District Court level are not mandated by the language of 42 U.S.C. § 2000e–16(d).