Stephen P. BLONDO, Plaintiff-Appellant,

v.

Benjamin BAILAR, Postmaster General of the United States Postal Service, et al., Defendants-Appellees.

No. 75–1783.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 19, 1976.

Decided Jan. 14, 1977.

---

James E. Hartley, Denver, Colo. (R. Brooke Jackson, Denver, Colo., on the brief), for plaintiff-appellant.

Richard J. Spelts, First Asst. U.S. Atty., Denver, Colo., and John H. Arbuckle, Regional Labor Counsel, U.S. Postal Service, San Bruno, Cal. (James L. Treece, U.S. Atty., Denver, Colo., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiff-appellant, Stephen P. Blondo, a former employee of the United States Postal Service, complains of adverse personnel action by the Postal Service. In two separate claims he alleges, first, discrimination in federal employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.*, and in particular Section 2000e–16 thereof. He alleges improper and unfair evaluation, training and counseling and termination because of his national origin or ancestry. The second claim for relief avers arbitrary, capricious and wrongful actions by the Postal Service in violation of 5 C.F.R. Section 315.803 and Section 315.804; 5 U.S.C. Sections 4301 *et seq*; and 5 U.S.C. Section 7501. Here there is no allegation of discrimination. In our court plaintiff complains of rulings of the district court which he says impeded "meaningful" pretrial discovery, and which denied plaintiff a trial *de novo* with respect to either of his claims.

The district court made findings of fact in substance as follows:

Blondo is a United States citizen of Italian-Hungarian ancestry. Defendant Bailar is a Postmaster General and Chief Executive Officer of the United States Postal Service (which is an independent establishment and agency of the Executive Branch of the United States with the Denver Division of the Western Region at Denver, Colorado). On December 9, 1972, plaintiff received a career appointment to the position of Cleaner, P.S. Level 1, a janitorial position with the Postal Service. His assignment was to the Denver Terminal Annex and was at an annual salary of $6,344. Thus, the court found, plaintiff was an employee in the Postal Career Service, as described in 39 U.S.C. Section 1001(b). Plaintiff's work consisted mainly of sweeping on the fourth floor of the Terminal Annex.

Blondo's appointment was subject to successful completion of a 90-day probationary period which commenced December 9, 1972. Such probationary period would have ended on or about March 9, 1973 had he not been discharged from the Postal Service on January 19, 1973. On January 19, however, he received a letter from the Denver Postmaster which notified him that he was discharged effective that same day. The letter stated:

This letter is my notice that you will be separated from the Postal Service effective Friday, January 19, 1973. You are

being separated during your Probationary Period for failure to meet the required performance standards of your position, and for leaving your work area without permission. I regret that you have not met the requirements of your position and that it is necessary to take this action. (Rec. on App. Vol. IV, at 22). Several incidents are assigned in the administrative record by the Postal Service as causes of Blondo's being fired. Blondo was counseled four times because of his job performance.[1]

Foreman Heard (*see* footnote 1) completed a job evaluation form on plaintiff's performance in which he said that he was poor as to accuracy, reliability and thoroughness; the quality of his work was below average; and his attitude, conduct, neatness and cooperation with supervisors was poor; his safety record and attendance were good. Heard recommended that he be separated. Parker recommended his discharge and then Postmaster Cavender advised him that he was being discharged. The trial court found against plaintiff on the question of discrimination growing out of his ancestry, pointing out that there was no specific instance furnished that would even suggest that this was the basis.

After the discharge appellant had filed a complaint with the EEOC in which he claimed that his discharge was discriminatory grounded on his being a male Caucasian Italian. This was investigated formally and resulted in the conclusion that there was no discrimination. Informal adjustment efforts failed, whereby the case was referred for review to the Assistant Western Regional Postmaster General for Employee and Labor Relations. Mr. Costello, the official in question, told plaintiff that review of the record did not support his contention. Plaintiff then went to the Civil Service Commission, but here again he was unable to find any consolation. He appealed to the Board of Appeals which also made a negative determination. In all of these administrative proceedings appellant represented himself. It was only after the present lawsuit was filed that counsel was appointed.

A diligent effort was made by his appointed counsel to develop some facts. Counsel on this appeal complain that they were impeded by the court in their efforts to conduct discovery and also to get a trial *de novo* on both claims.

The court relied on *Carreathers v. Alexander,* Civil Action No. C–5082, in the District Court for the District of Colorado which held that a federal employee is not entitled to a trial *de novo.* The trial court here sought to follow a middle course, whereby it relied on the administrative record and a limited amount of testimony.

The trial court finally denied the request for trial *de novo* and at last reaffirmed its position denying discovery. The only exception was that appellant was allowed to testify and call three witnesses and to conduct limited discovery. Review of these orders is sought as well as review of the

---

1. On December 28, 1972, Foreman Heard counseled him. He told Blondo that his work was not meeting the standards of a Postal Service cleaner, that he was too slow, and that he would have to improve. In a memorandum of that date, Heard advised Superintendent Parker of the content of the counseling discussion.

   Parker testified that early in 1973 he discussed plaintiff's work performance with him, advised him that his work was not up to standard, and that he would be dismissed if his performance did not improve. (Rec. on App. Vol. V at 35).

   On January 6, 1973, Foreman Carr found plaintiff seated and talking to another employee in a room set aside for meals and coffee breaks at a time when he was supposed to be at work. Carr counseled plaintiff regarding this matter and ordered him back to work. He also submitted a memorandum to Superintendent Parker regarding the incident and counseling. Carr testified at the administrative hearing that he also counseled plaintiff on another occasion for safety hazards in the manner in which plaintiff carried his broom.

   On January 8, 1973 Foreman Heard again counseled Blondo regarding his poor work. On that day he sent a memorandum to Parker stating that plaintiff's work was unsatisfactory as he had poor work habits, was too slow, made no effort to improve, and did not clean the areas assigned to him. Heard also stated that plaintiff would be found working in an area not assigned to him, and when asked why he was doing so, would give Heard a "smart answer."

other actions of the court preceding the trial. The judgment of the court was that the plaintiff was not entitled to recover on the discrimination claims and on the second claim, the arbitrariness allegation, the court found that the plaintiff's rights in the light of his probationary status were not violated.

The contentions referred to present to us the following issues:

1. Whether a discharged federal employee who claims to have been discharged unlawfully on the basis of his national origin or ancestry, and who had fully exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended, is entitled to trial *de novo* in federal court of his employment discrimination claims? Should discovery be limited at the trial in any fashion?

2. Whether 5 U.S.C. Section 4304(b) and Section 7501 and 5 C.F.R. 315.803 and 315.804 are applicable to probationary Postal Service employees.

3. Whether attorneys fees should be awarded at this time.

### I.

### THE TRIAL DE NOVO ISSUE

■ Issue number 1 set out above need not be labored because the Supreme Court has clarified it in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416. The unanimous Court held that Section 717(c) of Title VII does give a federal employee the same right to a trial *de novo* as is enjoyed by an employee in the private sector. Thus, the case relied on by the trial court, *Salone v. United States,* 511 F.2d 902 (10th Cir. 1975), is in effect repudiated. The reason was that Congress by the 1972 Amendments equated a federal employee's civil action with private sector plenary trials. *Id.* 425 U.S. 840, 96 S.Ct. at 1956. As a result of this Supreme Court action, counsel agree that this first claim should be remanded in accordance with the *Chandler* decision.

*Chandler* also teaches that it is not appropriate to impose limits on discovery in a federal employee case. Thus, plaintiff is going to have to have an opportunity to fully develop the factual background of the case. *Cf.* the standards mentioned in *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 342–345 (10th Cir. 1975), wherein the limits mentioned are relevancy and burdensomeness. The trial court, of course, did not have the advantage of the *Chandler* case when the question was decided and undoubtedly in the light of that case the court will without extensive comment afford the plaintiff his rights in this regard.

### II.

### THE "ARBITRARY AND CAPRICIOUS" CAUSE OF ACTION

■ Next the plaintiff contends that the Postal Service failed to comply with several statutes and regulations in the course of training appellant and finally separating him. These are: 5 C.F.R. Section 315.803 and Section 315.804 (civil service regulations pertaining to probationary employees); 5 U.S.C. Section 3321 (pertaining to periods of probation for employees appointed to the competitive service); 5 U.S.C. Section 4301 *et seq.* (pertaining to performance ratings of employees of federal agencies); 5 U.S.C. Section 7501 (pertaining to removal or suspension of employees in the competitive service); and 5 U.S.C. Section 551 *et seq.* (the Administrative Procedure Act), particularly Section 706 (pertaining to review of agency action which is arbitrary or capricious).

The trial court, however, ruled out the application of the provisions on the ground that they did not apply to the Postal Service because of 39 U.S.C. Sections 101 *et seq.* and especially Section 410. Plaintiff disputes the determination made particularly as to 5 U.S.C. Section 4304(b) and Section 7501.

The Postal Service's position is that the 1970 Postal Reorganization Act (PRA), 39 U.S.C. Sections 101 *et seq.* has removed the Postal employees from the competitive Civil Service system. From a reading of these various statutes, it would appear that the Postal Service is correct that the employees

are not part of the competitive Civil Service system.

We note that the Civil Service statutes as the same are modified by the Collective Bargaining Agreement are inapplicable to the Postal Service employees as far as the right to procedural recognition in terms of hearing, etc.

We are also mindful that the appellant in this case is a probationary employee and that his rights are limited to a greater extent than permanent employees.

We have not considered the demand of appellant for the award of attorney's fees since it does not appear that this was ever raised in the trial court, and accordingly, it is not appropriate for this court to consider the problem.

The judgment of the district court is affirmed in part and is reversed and remanded for new trial insofar as Count I is concerned, based on the fact that the *Chandler* decision was announced after the district court judgment was entered and before the cause came before this court on appeal. The parties have stipulated that this requires that the appellant be given a plenary trial on his Title VII claim. It is so ordered.